**UNITED STATES DISTRICT COURT**

**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| HEWLETT-PACKARD COMPANY, and HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P.<br><br>Plaintiffs,<br><br>v.<br><br>WAREHOUSE DEPOT, INC. d/b/a Supply Depot, Inc., SUPPLY DEPOT, INC. and PAUL ARBOR,<br><br>Defendants. | ) | 05 248 ML<br><br>Civil Action No. |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES: (1) TRADEMARK COUNTERFEITING (15 U.S.C. §1116(d)(1)(B)); (2) TRADEMARK INFRINGEMENT (15 U.S.C. §1114); (3) FALSE DESIGNATION OF ORIGIN (15 U.S.C. §1125); (4) COMMON LAW UNFAIR COMPETITION; AND (5) R.I. GEN. LAWS § 6-2-1 *et seq.*; and JURY DEMAND**

## COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF

Plaintiffs Hewlett-Packard Company and Hewlett-Packard Development Company, L.P., (collectively "Hewlett-Packard"), for their complaint against Defendants Warehouse Depot, Inc. d/b/a Supply Depot, Inc., Supply Depot, Inc. and Paul Arbor (collectively as "Defendants") allege as follows:

## INTRODUCTION

1. Defendants are engaged in the marketing, distribution, and sale of counterfeit Hewlett-Packard inkjet printer cartridges. These cartridges being sold by Defendants bear counterfeit labeling with Hewlett-Packard's federally registered HP, HP logo, HP INVENT logo, and/or HP INVENT trademarks. Unless enjoined, Defendants will continue to pass off their counterfeit goods as coming from or endorsed by Hewlett-Packard, irreparably harming Hewlett-

Packard in the process.

## PARTIES

2. Hewlett-Packard Company is a Delaware corporation with its principal place of business in Palo Alto, California.

3. Hewlett-Packard Development Company, L.P. is a Texas limited partnership with its principal place of business in Houston, Texas.

4. On information and belief, Defendants Warehouse Depot, Inc. d/b/a Supply Depot, Inc. and/or Supply Depot, Inc. are or were corporations organized and existing under the laws of the state of Rhode Island with a principal place of business at 118 Manton Avenue, Providence, Rhode Island 02909.

5. On information and belief, Defendant Paul Arbor is an individual who is a resident of the state of Rhode Island and who is the chief executive and sole shareholder of Supply Depot, Inc.

## JURISDICTION AND VENUE

6. This action arises under the Trademark (Lanham) Act of 1946, as amended, 15 U.S.C. Sections 1051 *et seq.* This Court has jurisdiction pursuant to 15 U.S.C. Section 1121, 28 U.S.C. Section 1331, 28 U.S.C. Section 1338(a), and 28 U.S.C. Section 1367(a).

7. Venue is proper in the District of Rhode Island pursuant to 28 U.S.C. Sections 1391(b) and (c) in that the District of Rhode Island is the district wherein Defendants reside.

## HEWLETT-PACKARD'S MARKS

8. Plaintiff Hewlett-Packard Company is an internationally known company specializing in computer hardware and software, printers, electronics, and other technical goods. The company was originally founded in 1939 and now has tens of thousands of employees worldwide with sales and support offices and distributorships worldwide in more than 100 countries.

9. Hewlett-Packard owns several United States Trademark Registrations for the marks HP, HP logo, and HP INVENT logo, including *inter alia*, HP (U.S. Registration No. 1840215); HP AND DESIGN (ROUNDED RECTANGLE) (U.S. Registration No. 1842724); and HP INVENT & DESIGN (U.S. Registration No.'s 2586062 and 2474422). Copies of these trademark registrations, (collectively the "HP Marks"), as printed out from the website of the United State Patent and Trademark Office, are attached as Exhibit A and incorporated by reference. These marks have been in use for many years and are famous throughout the world. As the registrant of the above registrations, Hewlett-Packard has the exclusive, nationwide right to use and to license the use of the HP Marks.

10. For many years, Hewlett-Packard has continuously used the HP Marks in connection with the promotion, advertising, and sale of Hewlett-Packard printers and printer supplies, including inkjet cartridges. Hewlett-Packard has invested a substantial effort over a long period of time, including the expenditure of substantial dollars, to develop goodwill in the HP Marks to cause consumers throughout the United States and the world to recognize these marks as distinctly designating Hewlett-Packard goods and services. Hewlett-Packard also provides its customers with products and services that meet well-known high standards for performance and reliability.

11. As a result of the lengthy and substantial use of the HP Marks, these marks are extremely strong and widely recognized by computer and printer users and consumers as representing the goods and services offered by Hewlett-Packard. The HP Marks have come to be known by actual and potential customers as marks owned by and associated exclusively with Hewlett-Packard, and as symbolizing the exceptional goods designed, manufactured, distributed, marketed, and sold by or on behalf of Hewlett-Packard. The HP Marks are famous and strong marks, and they have secondary meaning. Due to the high quality of Hewlett-Packard's goods and services, the HP Marks are seen as representative of quality, reliability and consistency, and they have become an extremely valuable asset carrying substantial goodwill.

12. At all times alleged herein, Hewlett-Packard has provided notice that the HP

INVENT logo is registered by displaying it with the letter R enclosed within a circle, thus ®. In addition, on information and belief, Defendants had actual notice that the HP Marks were registered.

## DEFENDANTS' INFRINGING USES

13. Defendants are marketers, distributors and sellers of, among other items, printer ribbons, cartridges, and laser toner cartridges. In particular, Defendants have marketed, distributed and sold used inkjet cartridges bearing the HP Marks in packaging that represent the used cartridges as new Hewlett-Packard cartridges.

14. Defendants are selling these cartridges via a toll-free telephone number, from a website at www.supplydepot.com and from an operation in Providence, Rhode Island.

15. In December 2004 and January 2005, investigators working on behalf of Hewlett-Packard received several inkjet cartridges that had been purchased directly from Defendants. Upon inspection of these cartridges in March by Hewlett-Packard's representatives, Hewlett-Packard learned that several of the cartridges of different types were actually used inkjet cartridges that had been refilled and placed in counterfeit packaging bearing the HP Marks in a manner that represents the cartridges as new Hewlett-Packard cartridges.

16. The counterfeit cartridges purchased from Defendants were of model numbers C6578DN and C1823D. True and correct copies of documents reflecting the purchases from Defendants are attached hereto as Exhibit B.

17. As a result of these findings, Hewlett-Packard undertook additional investigation of Defendants.

18. In late February 2005, Hewlett-Packard's investigators made a second purchase from Defendants over the internet. From this test purchase, Hewlett-Packard found additional counterfeit C6578DN and C1823D cartridges. True and correct copies of the documents reflecting this test purchase are attached hereto as Exhibit C.

19. In March 2005, a Hewlett-Packard investigator made a further purchase of a C1823D

cartridge from Defendants in person at their Providence location. This cartridge also proved to be counterfeit upon examination by Hewlett-Packard. A true and correct copy of the sales order reflecting this purchase is attached hereto as Exhibit D.

20. Hewlett-Packard conducted one further test purchase from Defendants in May 2005. All of the cartridges purchased were examined by Hewlett-Packard and determined to be counterfeit. This purchase included C6578DN, C1823D and the 51645A cartridges. A true and correct copy of the sales order reflecting this purchase is attached hereto as Exhibit E.

21. Defendant Paul Arbor is directly involved in Supply Depot's marketing, distribution and sales of the counterfeit cartridges. On information and belief he has intentionally sold counterfeit inkjet cartridges bearing counterfeit HP marks.

<u>FIRST CLAIM FOR RELIEF</u>

(Trademark Counterfeiting)

(15 U.S.C. §1116(d)(1)(B))

22. The allegations of paragraphs 1 through 21 are incorporated herein by reference.

23. In connection with the marketing and sales of inkjet cartridges, Defendants have used non-genuine HP Marks which are identical or substantially indistinguishable from Hewlett-Packard's registered marks.

24. The HP Marks are registered on the Principal Register for the same class of goods in connection with which Defendants' counterfeit marks are being used.

25. Hewlett-Packard's registered marks are currently in use.

26. At all relevant times alleged herein, Defendants' use of counterfeit copies of the HP Marks was unauthorized by Hewlett-Packard.

27. Defendants have intentionally used counterfeits of the HP Marks all the while knowing that the marks were counterfeit because Defendants had no authority to use the HP Marks to identify non-genuine goods.

28. Defendants intentionally used counterfeits of the HP Marks in connection with the

sale and/or offering for sale or distribution of its goods and services, namely in connection with the sale and/or offering for sale or distribution of inkjet cartridges.

29. Defendants' use of counterfeit copies of HP Marks on its goods and services is likely to cause confusion, mistake or to deceive.

30. By these acts, Defendants willfully intended to counterfeit Hewlett-Packard's registered trademarks and to trade on the reputation of Hewlett-Packard, the owner of the trademarks.

31. Because of the conduct of Defendants, Hewlett-Packard has been irreparably harmed in its business. Hewlett-Packard will continue to suffer irreparable harm unless Defendants are restrained from counterfeiting the HP Marks.

32. Without injunctive relief, Hewlett-Packard has no means by which to prevent Defendants' infringing conduct, and Hewlett-Packard will continue to be harmed irreparably by the confusion and deception of the public. No amount of money damages can adequately compensate Hewlett-Packard if it loses the ability to control the use of its trademarks, reputation, and goodwill. Thus, Hewlett-Packard is entitled to injunctive relief prohibiting Defendants from using the HP Marks in any promotion, advertisement, or sale of inkjet cartridges and/or related goods or services.

33. Hewlett-Packard is entitled to recover all profits heretofore realized by Defendants during their use of the infringing HP Marks, as well as Hewlett-Packard's costs in this action pursuant to 15 U.S.C. Section 1117(a).

34. Defendants' actions have been willful, malicious, and fraudulent with knowledge of the likelihood of confusion and deception and with intent to confuse and deceive, as alleged above. Therefore, Hewlett-Packard is entitled to recover three times the amount of Defendants' profits plus Hewlett-Packard's reasonable attorneys' fees pursuant to 15 U.S.C. Section 1117(b).

35. Alternatively, Hewlett-Packard is entitled at its election to recover statutory damages pursuant to 15 U.S.C. Section 1117(c).

SECOND CLAIM FOR RELIEF

(Infringement of Registered Mark)

(15 U.S.C. §1114)

36. The allegations of paragraphs 1 through 21 are incorporated herein by reference.

37. Hewlett-Packard's registered HP Marks are inherently distinctive and have acquired secondary meaning. Purchasers associate the HP Marks only with Hewlett-Packard products. This is a result both of the trademarks' inherent distinctiveness and of extensive advertising and sales throughout the United States of goods and services bearing the HP Marks.

38. Because of Defendants' infringement, Hewlett-Packard has been irreparably harmed in its business. Hewlett-Packard will continue to suffer irreparable harm unless Defendants are restrained from infringing the HP Marks.

39. Without injunctive relief, Hewlett-Packard has no means by which to prevent Defendants' infringing conduct, and Hewlett-Packard will continue to be harmed irreparably by the confusion and deception of the public. No amount of money damages can adequately compensate Hewlett-Packard if it loses the ability to control the use of its trademarks, reputation and goodwill. Thus, Hewlett-Packard is entitled to injunctive relief prohibiting Defendants from using the HP Marks in any promotion, advertisement or sale of inkjet cartridges and/or other related goods or services.

40. Hewlett-Packard is entitled to recover all profits heretofore realized by Defendants during their use of the infringing HP Marks, as well as Hewlett-Packard's costs in this action pursuant to 15 U.S.C. Section 1117(a).

41. Defendants' actions have been willful, malicious and fraudulent with knowledge of the likelihood of confusion and deception and with intent to confuse and deceive, as alleged above. Therefore, Hewlett-Packard is entitled to recover three times the amount of Defendants' profits plus Hewlett-Packard's reasonable attorneys' fees pursuant to 15 U.S.C. Section 1117(b).

42. Alternatively, Hewlett-Packard is entitled at its election to recover statutory damages pursuant to 15 U.S.C. Section 1117(c).

THIRD CLAIM FOR RELIEF

(Unfair Competition and False Designation of Origin)

(15 U.S.C. §1125(a))

43. The allegations of paragraphs 1 through 21 are incorporated herein by reference.

44. By reason of Defendants' acts complained of herein, Defendants have intentionally engaged in conduct that constitutes a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact tending wrongfully and falsely to describe or represent a connection or affiliation between Hewlett-Packard's goods and services and Defendants' goods and services in violation of 15 U.S.C. Section 1125(a). Customers are likely to be confused by Defendants' use of such false designations of origin, and false descriptions or representations regarding Hewlett-Packard's goods and services and Defendants' goods and services.

45. Without injunctive relief, Hewlett-Packard has no means by which to prevent Defendants' infringing conduct, and Hewlett-Packard will continue to be harmed irreparably by the confusion and deception of the public. No amount of money damages can adequately compensate Hewlett-Packard if it loses the ability to control the use of its trademarks, reputation and goodwill. Thus, Hewlett-Packard is entitled to injunctive relief prohibiting Defendants from using the HP Marks in any promotion, advertisement or sale of any inkjet cartridges and/or other related goods or services.

46. Hewlett-Packard is entitled to recover all profits heretofore realized by Defendants during their use of the infringing HP Marks, as well as Hewlett-Packard's costs in this action pursuant to 15 U.S.C. Section 1117(a).

47. Defendants' actions have been willful, malicious, and fraudulent with knowledge of the likelihood of confusion and deception and with intent to confuse and deceive, as alleged above. Therefore, Hewlett-Packard is entitled to recover three times the amount of Defendants' profits plus Hewlett-Packard's reasonable attorneys' fees pursuant to 15 U.S.C. Section 1117(b).

48. Alternatively, Hewlett-Packard is entitled at its election to recover statutory damages

pursuant to 15 U.S.C. Section 1117(c).

FOURTH CLAIM FOR RELIEF

(Common Law Unfair Competition)

49. The allegations of paragraphs 1 through 21 are incorporated herein by reference.

50. In addition to its rights under the Lanham Act as set forth above, Hewlett-Packard has, with respect to its products and services, valid common law rights in the HP Marks.

51. Hewlett-Packard's registered HP Marks are inherently distinctive and have acquired secondary meaning. Purchasers associate the HP Marks only with Hewlett-Packard products. This is a result both of the trademarks' inherent distinctiveness and of extensive advertising and sales throughout the United States of goods and services bearing the HP Marks.

52. Defendants' use of the HP Marks is in violation and derogation of Hewlett-Packard's common law rights and is likely to cause confusion, mistake, and deception among customers and the public as to the source, origin, sponsorship, affiliation or quality of its services, thereby causing loss, damage, and injury to Hewlett-Packard and to the purchasing public. Defendants knew, or in the exercise of reasonable care should have known, that their conduct was likely to so mislead the public.

53. The foregoing conduct by Defendants has been knowing, deliberate, willful, intended to cause mistake or to deceive, and in disregard of Hewlett-Packard's rights.

54. Defendants' wrongful acts, as alleged above, have permitted or will permit it to make substantial sales and profits on the strength of Hewlett-Packard's nationwide and international marketing, advertising, sales and customer recognition.

55. As a direct and proximate result of Defendants' wrongful conduct, as alleged above, Hewlett-Packard has been and will be deprived of substantial sales in an amount as yet unknown but to be proved at trial, and has been and will be deprived of the value of its names and marks as commercial assets in an amount as yet unknown but to be determined at trial.

56. Hewlett-Packard has no adequate remedy at law for, and is being irreparably harmed

by, Defendants' continuing violation of it rights as set forth above, and such harm will continue unless Defendants are enjoined by this Court.

FIFTH CLAIM FOR RELIEF

(Infringement, Dilution and/or Injury to Business Reputation – R.I. Gen. Laws § 6-2-1 *et seq.*)

57. The allegations of paragraphs 1 through 21 are incorporated herein by reference.

58. Defendants' use of the HP Marks is in violation and derogation of R.I. Gen. Laws § 6-2-1 *et seq.* in that Defendants have been altering inkjet cartridges so that they appear to have value because of age, source, or authorship that these cartridges do not have, and/or are in possession of such cartridges with the intent to sell. Specifically, Defendants have been packaging used inkjet cartridges using the HP Marks in a manner to defraud purchasers into believing the cartridges are new.

59. Defendants' use of the HP Marks is in violation and derogation of R.I. Gen. Laws § 6-2-1 *et seq.* in that Defendants have been intentionally displaying, advertising, distributing, offering for sale, selling, and/or possessing inkjet cartridges that bears counterfeit HP Marks.

60. All conditions precedent to Hewlett-Packard's rights to bring this action and to obtain the relief requested herein have occurred.

WHEREFORE, Hewlett-Packard prays for relief as follows:

1. That Defendants be adjudged to have willfully and deliberately sold and distributed goods bearing counterfeited copies of Hewlett-Packard's registered HP Marks, in violation of federal law;

2. That Defendants be adjudged to have willfully and deliberately infringed Hewlett-Packard's registered HP Marks, in violation of federal law;

3. That Defendants be adjudged to have competed unfairly with Hewlett-Packard by their use of counterfeit copies of the HP Marks, in violation of federal law;

4. That Defendants be adjudged to have competed unfairly with Hewlett-Packard by their use of counterfeit copies of the HP Marks, in violation of state law;

5. That Defendants and their officers, agents, owners, employees, confederates, attorneys and any persons in active concert or participation with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. Using the HP Marks, or any other mark including any reproduction, counterfeit, copy or colorable imitation of said marks, in connection with the advertising, manufacturing, offering for sale, distribution or sale of inkjet cartridges and/or any other goods as new or genuine that are not authorized by Hewlett-Packard.

b. Using the HP Marks, or any other mark including any reproduction, counterfeit, copy or colorable imitation of said marks in any manner likely to cause others to believe that any of Defendants' non-genuine goods are made by, distributed by, associated or connected with Hewlett-Packard's goods or services.

c. Passing off, inducing or enabling others to sell or pass off any inkjet cartridges and/or other goods which are not authorized by Hewlett-Packard as new and genuine Hewlett-Packard goods.

d. Committing any other acts calculated to cause actual or potential purchasers to believe that Hewlett-Packard is the source or sponsor of Defendants' goods.

e. Shipping, delivering, printing, ordering, importing, distributing, returning, transferring, destroying, or otherwise moving or disposing of in any manner such inkjet cartridges and/or other goods, packaging or other material falsely bearing or intended to bear the HP Marks or any reproduction, counterfeit, copy, or colorable imitation of the same.

f. Assisting, aiding, or abetting any supplier, distributor or any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs a through e.

g. destroying, concealing, secreting, or modifying any documents or electronic data related in any way to Defendants' purchase, sale or marketing of any items bearing or purporting to bear HP's marks.

6. That Defendants be ordered to deliver up and destroy all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the Defendants, bearing the registered marks or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same pursuant to 15 U.S.C. Section 1118;

7. That Defendants be ordered to advise Hewlett-Packard of the identity of all customers, suppliers, distributors, and manufacturers of Defendants' cartridges bearing counterfeit copies of the HP Marks, and the number of such cartridges that have been sold, supplied, distributed, or manufactured, and to deliver to Hewlett-Packard all records of purchases, manufacturing, and sales of goods bearing the HP Marks

8. For an award of all profits heretofore realized by Defendants during their use of the infringing marks pursuant to 15 U.S.C. Section 1117(a); and if, and to the extent the corporate defendants no longer exist, no longer enjoy the rights and privileges of a Rhode Island corporation, or are otherwise dissolved, that all of the corporate defendants' shareholders be decreed and adjudged to hold the assets of the corporate defendants in trust for the benefit of its creditors, including HP

9. For an award of three times the amount of Defendants' profits and Hewlett-Packard's reasonable attorneys' fees pursuant to 15 U.S.C. Section 1117(b);

10. For an award in the alternative, if Hewlett-Packard so elects, of statutory damages pursuant to 15 U.S.C. Section 1117(c);

11. For an award of costs; and

12. For all other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury of all issues properly triable of right by a jury.

# VERIFICATION

I, Fadi Manna, being duly sworn, hereby state under the pains and penalties of perjury that I am Counsel to Hewlett-Packard Company, that I have read the foregoing Verified Complaint, I know the contents thereof, and that the statements contained therein are true, except those stated to be on information and belief, and that I believe those are true.

June 8, 2005

F. M
Fadi Manna

June 9, 2005

Respectfully,

William M. Dolan III (#4524)
Brian J. Lamoureux (#6211)
Brown Rudnick Berlack Israels LLP
121 South Main St.
Providence, RI 02903
401 276 2600
401 276 2601 Facsimile

Attorneys for Plaintiffs
HEWLETT-PACKARD COMPANY and
HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P.

Of Counsel:
MARTIN R. GLICK
JEFFREY E. FAUCETTE
HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN
A Professional Corporation

WD 060105/1-107980073/1220777/v1